JUDGE SWEET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

CHARLES CAINES,

     Plaintiff,

 -against-

THE CITY OF NEW YORK, DEPUTY INSPECTOR THOMAS DUTKOWSKY, and LIEUTENANT WILSON ARAMBOLES, individually and in their official capacities,

     Defendant.
-----------------------------------------------------------------X

13 CV 0676

**COMPLAINT**

Jury Trial Demanded

Docket No.:



  Plaintiff CHARLES CAINES, through his attorneys, LEEDS BROWN LAW, P.C., alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This is a civil action based upon the above-named defendant's violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311, *et seq.* ("USERRA"), and the New York State Executive Law, Human Rights Law, § 290 *et seq*, as well as any other cause of action that can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked pursuant to 38 U.S.C. § 4323(b) and 28 U.S.C. § 1331. The supplemental jurisdiction of the Court (28 U.S.C. § 1367) is invoked over state and local law causes of action.

3. Venue is proper pursuant to 38 U.S.C. § 4323(c) and 28 U.S.C. § 1391. All of the events forming the basis of Plaintiff's claims occurred in the Southern District, and the Defendant municipality is located in the Southern District.

4. Any and all other prerequisites to the filing of this suit have been met.

5. Plaintiff has complied with the General Municipal Law § 50. Plaintiff filed a Notice of Claim on June 28, 2012 and appeared for a 50-h hearing on August 29, 2012. Defendant has neglected or refused to make adjustment or payment.

## PARTIES

6. At all relevant times, Plaintiff, Charles Caines ("Caines"), was an employee of the New York City Police Department and a resident of Orange County, New York.

7. Defendant, the City of New York, ("NYC"), is a municipality corporation with its principal place of business in New York County, New York. NYC has the responsibility for hiring and training within the New York City Police Department ("NYPD") and setting and executing the policies of the NYPD.

8. Defendant, Thomas Dutkowsky ("Dutkowsky"), is employed by NYC as a Deputy Inspector for the NYPD. Dutkowsky is responsible for the NYPD's maintenance and operation, including, but not limited to, employment related issues. Additionally, Defendant Dutkowsky was a policymaker for the NYPD, charged with the responsibility of insuring that employees were not subjected to unlawful retaliation or harassment. He

was also responsible for properly training and supervising employees with respect to employment issues. Dutkowsky aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct described below.

9. Defendant, Wilson Aramboles ("Aramboles") is employed by NYC as a Lieutenant. Aramboles is responsible for the NYPD's maintenance and operation, including, but not limited to, employment related issues. Additionally, Defendant Aramboles was a policymaker for the NYPD, charged with the responsibility of insuring that employees were not subjected to unlawful retaliation or harassment. He was also responsible for properly training and supervising employees with respect to employment issues. Aramboles aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct described below.

## FACTUAL BACKGROUND

10. In February 1994, Caines began his employment with NYC as a police officer with the New York City Police Department ("NYPD").

11. The NYPD is an administrative agency of NYC.

12. In June 2002, Caines was promoted to Sergreant.

13. Throughout his employment with NYC and the NYPD, Caines performed his duties in exemplary manner.

14. Since November 22, 2006, Caines has been a member of the New York Air National Guard (the "National Guard"), and currently holds the rank of Lieutenant.

15. On January 22, 2009, Caines notified his platoon commander, Lieutenant Thomas O'Connor ("O'Connor") that the National Guard would soon be issuing orders for him to report for duty at McGhee Tyson Air National Guard Base (the "Military Base"), located in Alcoa, Tennessee, for the period on March 14, 2009 through April 27, 2009.

16. O'Connor advised Caines to notify Aramboles, since he was the Administrative Lieutenant.

17. Caines notified Aramboles of his upcoming military orders and, because Aramboles did not state the orders would be a problem, Caines understood that there would not be a problem.

18. In early March 2009, Caines received the anticipated orders from the National Guard to report for duty on March 14, 2009.

19. Caines submitted the requisite military leave paperwork to O'Connor, requesting leave for the period of March 14, 2009 through April 27, 2009.

20. Shortly thereafter, Aramboles informed Caines that his April 27, 2009 leave request would probably be denied because the NYPD did not have coverage for him on that day.

21. Caines informed Aramboles that he must be given leave for that day under USERRA, but Aramboles responded by stating that the commanding officer, Dutkowsky would probably not permit it to occur.

22. That same day, Roll Call notified Caines to testify in court on March 12, 2009 and he signed the notification, indicating that he would be present to testify.

23. He also noted that because the court appearance would conflict with a scheduled police training session, he would not be able to attend the training session.

24. Caines also notified O'Connor that he would be unable to attend the training session due to the court date.

25. Per NYPD policy, court testimony takes precedence over police training when there is a scheduling conflict.

26. Caines testified in court on March 12, 2009 then went to his precinct to return his weapon and police equipment before departing for military leave.

27. While at the precinct, Aramboles advised Caines that he would not be permitted to take military leave on April 27, 2009 so Caines asked that Aramboles contact the NYPD's Military Extended Leave Desk to rectify the matter.

28. On March 23, 2009, while on leave, a military supervisor gave Caines a note that required him to contact the NYPD, and allowed him to break National Guard procedure in order to do so.

29. Upon contacting the NYPD, Lieutenant M. Baker (the Desk Officer) told Caines that Aramboles wished to remind him that his leave request for April 27, 2009 had been denied.

30. Caines again requested that Aramboles contact the NYPD's Military Extended Leave Desk to rectify the matter.

31. Because Caines' ordered National Guard Service was continuing, Caines did not report for NYPD duty on April 27, 2009.

32. On April 28, 2009, Caines returned to work and shortly after his return, Aramboles issued Caines a command discipline (the "First Command Discipline").

33. A command discipline is a write-up that becomes a part of an officer's permanent record, an accumulation of which can result in action taken against the officer, up to and including termination.

34. Before taking the March/April 2009 military leave, Caines had never before received a command discipline while assigned at the 26th precinct.

35. The purported reason for the First Command Discipline was that Caines did not attend the March 12, 2009 police training session.

36. From April 2009 to January 2010 Caines was denied overtime on numerous occasions. On some of these occasions, Caines' name was written on overtime notifications, but scratched out and replaced with the name of another officer who did not take military leave.

37. On May 11, 2009, after working sixteen straight hours, Caines requested to take lost time to end his tour a few hours earlier than scheduled, and completed the necessary forms to do so, however, he inadvertently wrote the wrong end time in one form.

38. Later that day, Caines received another command discipline (the "Second Command Discipline") related to the mistaken end time.

39. While recorded time errors are relatively common amongst officers who work long hours, and the usual procedure is to correct the error once it is discovered, Caines was not afforded this courtesy extended to other officers who did not take military leave.

40. On or about May 31, 2009, Caines worked a double tour. The tour ran late due to the investigation of a crime, so Caines was unable to sign out on the roll call before it was verified and locked away by the Desk Officer who instead, documented in the command log that Caines worked up until that time.

7

41. The next day, O'Connor told Caines that a command discipline was going to be issued to him from another officer for failing to sign out after his double tour (the "Third Command Discipline"). Upon information and belief, other officers who did not take military leave do not receive command disciplines for such issues.

42. Under NYPD policy, a command discipline is supposed to be adjudicated within sixty days of issuance; however, no adjudication date was ever set in relation to the First Command Discipline, the Second Command Discipline, or the Third Command Discipline so Caines was unable to contest these disciplines, and they remain in his file.

43. On June 5, 2009, Caines filed a complaint with the NYPD Office of Equal Employment Opportunity ("OEEO"), alleging that he was being subjected to disparate treatment as a result of taking military leave.

44. The OEEO declined to investigate the complaint, stating that because of pending charges and specifications against him, the matter remained under the purview of the Deputy Commissioner of Trials until the charges and specifications had been resolved.

45. At the time Caines filed his complaint, no pending charges or specifications against Mr. Caines existed.

46. On September 11, 2009 Dutkowsky requested that the First Deputy Commissioner bring charges and specifications against Caines.

47. On September 27, 2009, after returning from military leave, Caines was transferred from the midnight tour to the day tour so Caines lost substantial income from night differential. Other officers who did not take military leave were not arbitrarily reassigned from the night tour to the day tour.

48. At the end of 2009, Caines received his performance scores from the NYPD, and was given an overall score of 2.5, a poor score.

49. Prior to taking military leave, Caines' overall performance score was rated as a 4.0, an excellent score.

50. In January 2010, Caines was summoned to the NYPD's Department of the Advocate, at which time he was notified that charges and specifications were being preferred against him in relation to the First Command Discipline, the Second Command Discipline, and the Third Command Discipline (the "CD Charges").

51. To date, a hearing has not been set with respect to the CD Charges.

52. Prior to taking military leave, Caines had taken and passed an open competitive exam to qualify for a promotion to the rank of lieutenant. Caines has not received such a promotion, and is now ineligible to be promoted due to the pendency of the CD Charges.

53. In January of 2010, Caines notified O'Connor that orders were again forthcoming from the National Guard for him to report for duty at the Military Base, beginning February 14, 2010.

54. Caines submitted his formal military leave paperwork to Arambales shortly thereafter.

55. Later that same month, Caines was summoned to the NYPD's Department of the Advocate, at which time he learned he was to stand trial for having allegedly shouted profanity at Lieutenant Christopher Ikone ("Ikone") in January of 2007 (the "2007 Incident").

56. While numerous witnesses were present at the time of the 2007 Incident, the investigator refused to interview any of these witnesses, claiming that it was "unnecessary."

57. Ultimately, Caines was found guilty of shouting profanity at Ikone, even though he had not shouted at Cohn.

58. In February of 2010, Caines was placed on dismissal probation as a result of the trial which means that he may be terminated by the NYPD, at its option, without any further proceedings whereas before, he could not be terminated without charges and a hearing.

59. In addition to the dismissal probation, the NYPD further penalized Caines by transferring him to the 110th Precinct.

60. The transfer to the 110th Precinct imposed a substantial hardship upon Caines, as he lives in Orange County, New York, and the 110th Precinct is in Queens, New York, which is a two hour longer commute.

61. In August 2012, Caines returned from extended military leave.

62. To date, Caines continues to be on dismissal probation, and remains assigned to the 110th Precinct.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(USERRA)

63. Defendant, NYC, has taken adverse employment actions against Plaintiff (including bringing false charges against Plaintiff, transferring Plaintiff, causing Plaintiff to lose overtime and other benefits, and failing to promote him), which were motivated, in part, upon Plaintiff's service with the National Guard and associated military leave, in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301, *et. seq.*

64. Defendant, NYC, has taken adverse employment actions against Plaintiff motivated, in part, upon Plaintiff's complaint of military service/leave discrimination, in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301, *et. seq.*

## SECOND CAUSE OF ACTION
(NEW YORK STATE HUMAN RIGHTS LAW)

65. As described above, Defendant NYC, has taken adverse employment actions against Plaintiff which were motivated, in part, upon Plaintiff's service with the National Guard and associated military leave and/or complaints about military service/leave discrimination, in violation of the New York State Executive Law § 296.

66. As described above, the individual Defendants, Aramboles and Dutkowsky, aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6).

## THIRD CAUSE OF ACTION
(NEW YORK STATE MILITARY LAW)

67. As described above, Defendant, NYC, has taken adverse employment actions against Plaintiff (including bringing false charges against Plaintiff, transferring Plaintiff, causing Plaintiff to lose overtime and other benefits, and failing to promote him), which were motivated, in part, upon Plaintiff's service with the National Guard and associated military leave, in violation of New York Military Law § 242.

68. Defendant, NYC, has taken adverse employment actions against Plaintiff motivated, in part, upon Plaintiff's complaint of military service/leave discrimination, in violation of New York Military Law § 242.

**WHEREFORE**, Plaintiff demands judgment against Defendant in the form of and/or for compensatory, pension, medical benefits, emotional, physical, and punitive damages (where applicable), lost pay, front pay, interest, injunctive relief, and any other damages permitted by law. Plaintiff also demands judgment against Defendant for each cause of action and for all applicable and permissible damages, in an amount to be assessed at the time of trial. Plaintiff further seeks injunctive relief, including but not limited to, the clearing of his personnel file of any wrongful disciplinary actions, and a permanent injunction enjoining Defendant and their agents from any further actions abridging Plaintiff's rights. Plaintiff further demands all attorneys' fees, disbursements and other costs and all further relief, equitable or otherwise, to which Plaintiff is entitled and/or which the court deems just and proper.

Dated: Carle Place, New York
       January 24, 2013

LEEDS BROWN LAW, P.C.
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

By: _____
    Matthew Weinick